## MARTIN *vs.* THE GREAT FALLS MAN'G COM'Y.

Where a clerk of a corporation, without authority, borrowed a sum of money, in the name of the corporation, which he converted to his own use, and absconded: it was *held*, that the corporation were not liable, although it was in evidence that he had, in two or three previous instances, borrowed money of other persons, in the name of the corporation, of which the plaintiff had no knowledge, which was repaid by another clerk, the money in those cases having been applied to the use of the company.

ASSUMPSIT for money had and received.

On the trial, the plaintiff produced the following memorandum in writing, viz: "Borrowed of Noah Martin, for the Co., one hundred and fifty dollars. C. Cutler. Jan'y 9, 1834." And he proved that on the date of the memorandum, Cutler, the signer, who had been in the employ of the defendants, as a clerk, made application to him, saying he wanted the money for the company, as they had some settlements to make, and that it should be returned in a few

days; and that he thereupon let Cutler have the money, taking the memorandum before mentioned.

It appeared that one Wells was at the time the general agent of the company, I. L. Folsom the general clerk, B. C. Sewell principal clerk in the counting room for the cotton business, and that Cutler had been a clerk in the latter counting room for some time before the said 9th of January, 1834, but that for four or five days previous to that date he had absented himself from his business. It did not appear that this fact was known to the plaintiff. On said 9th day of January, after borrowing the money, he absconded, and converted the money to his own use. There was no evidence that Cutler ever had any express authority to borrow money on the credit of the company, or for their use; but in order to show that the company were liable for the loan thus made, the plaintiff introduced the evidence of Z. Crowell, that Cutler had several times borrowed money at the store of Crowell & Wingate, which he said was for the company, and which had been repaid, generally by Cutler himself, but that one loan of $500 thus made, Sept. 13, 1833, for which Cutler gave a paper in which the company's name was mentioned, was repaid by Sewell, and that Sewell made no objection, at the time of the payment, to the authority of Cutler to borrow, and the witness never enquired respecting his authority of any one.

In another instance, six months or a year before he absconded, Cutler borrowed thirty or forty dollars of another person, and gave a due bill, signed with his name and the initials of the company, which was afterwards presented at the counting room, Sewell and Cutler being present, and Sewell paid it, no objections being made.

It appeared further, from the testimony of Sewell, that he had charge of paying all the bills in the cotton department— that he received the money for that purpose from Folsom, the general clerk, to whom he gave receipts, and that he had authority from Folsom to borrow money when necessary,

and exercised that authority, and borrowed of the merchants —that the usual pay day was Friday, but that the laborers sometimes left, and were settled with on other days—that Cutler was a clerk in the same counting room, engaged in keeping the books, but had nothing to do in the usual course of his business in paying out money, nor any authority to borrow, and that he never entrusted him so to do—but that Cutler had, perhaps half a dozen times, in his absence, paid out divers sums to the hands, and witness on his return accounted and settled with Cutler for the same—that on one occasion, which he thought was in February, 1833, after he had so accounted and settled with him, Cutler said he had borrowed money of Crowell & Wingate during his absence, and he wished witness to take the money and pay it, which he did—that he did not know of his having borrowed in the name of the company, and did not recollect how the due bill he took up was signed, but thought it probable it might have been signed as stated—that in July, 1833, Wells, the general agent, said to Cutler that he had heard that he had borrowed money on the credit of the company, and enquired if it was true ; and on Cutler's finally acknowledging that it was, Wells forbid him, and all the rest of the clerks in the counting room, except himself, from borrowing. It did not appear that the plaintiff had ever lent any money to Cutler before, or had any knowledge respecting Cutler's borrowing before, or of the prohibition by Wells, as before stated.

Upon this evidence the court directed a verdict for the defendant, subject to future consideration.

*Marston* and *Wells,* for the plaintiff, cited 1 *Esp. Rep.* 61 ; 1 *Ld. Raym.* 224 ; *Livermore on Agency* 23 ; 12 *Mod.* 346 ; 2 *Stark. Ev.* 58.

*Christie,* for the defendants, cited 11 *Mass. R.* 27 ; 12 *Mass. R.* 173 ; 1 *Green.* 231 ; 1 *Ld. Raym.* 1418 ; 6 *D. & E.* 176 ; 6 *Pick.* 198 ; *Payley on Agency* 152 ; 12 *Mass. R.* 237 ; *Angell & Ames on Corp.* 149 ; 4 *Mass.* 597.

Martin
*vs.*
G.F.Man'g Co.

GREEN, J. The evidence clearly fails to show either that Cutler had a general authority to borrow money on the credit of the company, or that any particular authority was given him to obtain the loan which is the subject of this suit; and unless the conduct of the defendants was such as to create a well founded belief in the plaintiff that he had general or special power for the purpose, the action cannot be sustained. Had Cutler, before the time of effecting the loan in question, frequently borrowed money of the plaintiff, and given assurances in the company's name for repayment, and had the company afterwards discharged the debts without objection, this would have afforded ground for the support of the present action against the company. Such a course of conduct, on the part of the company, must have led the plaintiff to suppose that Cutler was duly authorized to borrow; and, to say the least, it would have been unjust in them to refuse affirming his contract, when he proved unfaithful to his trust. It would, in effect, be sanctioning the doings of their agent when his measures proved beneficial, and denying his authority when they proved otherwise.

Another state of things might perhaps have given the plaintiff sufficient grounds for recovery against the company. Had Cutler been in the habit of borrowing money of any and all the traders in the neighborhood, and pledging the company's name for the payment, and had the company uniformly discharged those claims without objection, and had all this been known to the plaintiff when he made the loan in question, it is by no means certain that the company would not have been answerable.

But the case finds that the loan in question was the only one ever obtained from the plaintiff in the name of the company, by Cutler; and although it is in evidence that Cutler, in one or two instances, effected loans in the company's name, of other persons, which were paid by the proper officer of the company, yet it does not appear that these circumstances were known to the plaintiff, and consequently they could

form no inducement to him to make the loan in question on the credit of the company.

The company never authorized Cutler to pledge their credit, or recognized his contracts. The other agents of the company had not conferred, and it does not appear that they had power to confer, such authority on him; and the payment, by a sub-agent, of money borrowed by Cutler, and which came to the use of the company, cannot be construed as giving him a credit for that purpose. Besides, the plaintiff did not loan on the faith of those transactions. The necessary requisites are, therefore, wanting to charge the defendants, and let judgment be rendered on the verdict.

*Judgment for defendants.*